IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:17-CR-000246 |
| v. | (Judge Brann) |
| TARRON DENNIS, | |
| Defendant. | |

MEMORANDUM OPINION

NOVEMBER 30, 2018

Before the Court is Defendant Tarron Dennis' Motion to Suppress Pretrial Identification Due to an Overly Suggestive Photo Array and Preclude In-Court Identification. For the following reasons, that motion will be denied.

I. BACKGROUND[1]

In December 2016, Pennsylvania State Police traveled to the Rite Aid in Loyalsock Township, Lycoming County, to respond to a heroin overdose. Two individuals—Aaron Peters and his friend—had recently purchased heroin and injected themselves with it while their car was parked in the Rite Aid parking lot. Aaron Peters survived; his friend died.

Police arrived at the Rite Aid and questioned Peters as to how he obtained the heroin. Peters said that he contacted his usual heroin dealer—an individual

---
[1] The following facts were adduced during a suppression hearing held on November 19, 2018.

1

from whom he had purchased heroin on multiple occasions over the past year.[2] To obtain heroin for this particular binge, Peters said he and his dealer made arrangements to meet at Weis Market in Williamsport. Peters explained that when he and his friend arrived at Weis, two black males—one of whom was Peters' dealer—entered Peters' car, and the four individuals drove to an apartment complex. Both black males exited the vehicle, and Peters' dealer went inside a residence and returned to the vehicle with heroin. They drove up the road a short distance, exchanged money for drugs, and the dealer exited the vehicle. Peters and his friend then drove to the Rite Aid, purchased needles, and injected themselves with heroin. After passing out for a few hours, Peters awoke to find his friend unresponsive, and so called for help.

Although an ambulance and the police arrived, they were unable to revive Peters' friend. Police questioned Peters as to how he had obtained the heroin. Peters didn't know his dealer's name, but described him a black male. He showed an officer the phone number he used to contact his dealer, and the officer recognized the number as one under investigation by federal, state, and local law enforcement for heroin trafficking in the Williamsport area.[3] Police also knew

---

[2] Peters' dealer is alleged to be Tarron Dennis, the Defendant.

[3] In fact, Pennsylvania State Police had used that number a few months earlier to arrange a controlled purchase of heroin and were able to capture a surveillance photo of the dealer in that transaction. Peters would later view this surveillance image and conclude that the dealer

2

Defendant Tarron Dennis was one of several subjects associated with that phone number.

One month later in January 2017, an agent with the Federal Bureau of Investigation ("FBI Agent") and two other law enforcement officials met with Peters. The FBI Agent testified that he decided to meet with Peters after "information related to the overdose" was brought to his attention. According to the FBI Agent, at that time Dennis was not a suspect in the death of Peters' friend; Dennis was simply a subject in the "overall investigation."

In advance of this meeting, the FBI Agent compiled a 38-image photo array to show Peters. The photos depicted mugshots of individuals suspected to be involved with the Williamsport drug trade as well as individuals associated with the phone number Peters used to contact his dealer. The mugshot photo array contained images of 25 men and 13 women, depicting individuals of various ethnicities, ages, and with different physical characteristics. Dennis was among the individuals depicted in this photo array.

The FBI Agent also obtained a surveillance photo depicting Dennis after he had engaged in a controlled heroin transaction organized by Pennsylvania State Police. This was the only surveillance photo the FBI Agent brought to his meeting with Peters.

---

depicted in the controlled purchase transaction was the same person who sold heroin to Peters and his friend.

Peters was first shown the mugshot photo array. The FBI Agent instructed Peters to flip through the mugshots sequentially, and after viewing each photograph one at a time, to write down on the photograph how he knew that person. After reaching the seventh photograph, Peters stopped and wrote down, "guy with Dealer at Weis."[4] He continued to flip through the array, and when he reached the sixteenth photograph, he wrote down, "Dealler" [sic].[5]

After Peters made these two identifications using the mugshots, the FBI Agent showed Peters the surveillance image of Dennis. Peters confirmed that the surveillance photograph depicted his dealer, and wrote the word, "Dealer," on the photograph.[6] Dennis was the only individual depicted twice—both in a mugshot, and in the surveillance image.

Dennis was ultimately indicted on two counts: conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count I) and distribution of a controlled substance resulting in death and serious bodily injury in violation of 21 U.S.C. § 841(a)(1) (Count II).[7] Dennis pleaded not guilty to both counts,[8] and has been detained pending trial.[9]

---

[4] Exhibit 1 (ECF No. 60-3) at 7.

[5] *Id*. at 16.

[6] *Id*. at 39.

[7] Indictment (ECF No. 16).

[8] Not Guilty Plea (ECF No. 21).

[9] Order of Detention (ECF No. 22).

Dennis filed the instant motion to suppress Peters' pretrial identification of him, alleging that the procedures surrounding the pretrial identification were impermissibly suggestive. He also seeks to preclude any future in-court identification as fruit of the poisonous tree.[10] This Court convened an evidentiary hearing on November 19, 2018 and the matter is now ripe for disposition.

## II. DISCUSSION

Eyewitness identifications obtained in violation of the Due Process Clause may be suppressed.[11] To determine whether a pretrial identification procedure violated due process, the Court looks to whether the procedure was (1) unnecessarily suggestive and, if so, (2) whether the totality of the circumstances nevertheless render the identification reliable.[12]

### A. The Photo Array Was Unnecessarily Suggestive.

To evaluate the suggestiveness of the identification procedure, a court considers factors including the "size of the array, its manner of presentation, and its contents" and whether the "suspect's picture is so different from the rest that it suggests culpability."[13] The court also considers whether there was "some good

---

[10] Motion to Suppress (ECF No. 60).

[11] *See, e.g.*, *Perry v. New Hampshire*, 565 U.S. 228, 237-38 (2012).

[12] *United States v. Brownlee*, 454 F.3d 131, 138 (3d Cir. 2006) (citing *Manson v. Brathwaite,* 432 U.S. 98, 107 (1977) (explaining that an unnecessarily suggestive procedure that created a substantial risk of misidentification violates due process)).

[13] *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991)

reason for the failure to resort to less suggestive procedures."[14]  Defendants bear the burden to demonstrate that the identification procedure was unnecessarily suggestive.[15]

In the case at bar, the identification procedure used by the FBI Agent contains several suggestive attributes.  First, the photo array is problematic on its face because a photo array should not be assembled in a way where an individual is distinguished to a degree that suggests culpability.[16]  Here, the Government made no effort to include other individuals in the array that approximated Dennis' physical appearance.  After the overdose, Peters told investigators that his dealer was a "black male."  At a minimum, then, when the FBI Agent sought information from Peters related to the overdose, Dennis' image should have been shown only with other individuals resembling that description.  Instead, the photo array contains images of females and males of different races.

---

[14] *United States v. Stevens,* 935 F.2d 1380, 1389 (3d Cir. 1991) (internal quotations and emphases omitted) (explaining that suggestiveness inquiry contains two component parts: "that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures").

[15] *United States v. Clausen*, 328 F.3d 708, 712-13 (3d Cir. 2003) (citation omitted).

[16] *United States v. Burnett,* 773 F.3d 122, 133 (3d Cir. 2014) (explaining photo array should not distinguish a particular individual in a way that suggests culpability); *cf. United States v. Burnett,* 773 F.3d 122, 133 (3d Cir. 2014).  *cf. Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991) (collecting cases where courts have held that photographic arrays were not unduly suggestive "when certain characteristics of the defendant or his photograph are set apart from others"); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 974-75 (2d Cir. 1990) (holding that an array containing nine photographs depicting individuals who roughly approximated defendant's ethnicity, age, hair, facial hair did not cause defendant to "stand out" from the others).

Some individuals depicted in the array, however, do approximate Dennis' appearance. Dennis concedes that up to nine photographs may have been sufficiently similar. But those similar images were interspersed among others that did not resemblance Dennis, raising further questions as to whether the order in which the photos were shown could have had some suggestive impact.

Second, the manner of the presentation of the photographs is problematic because Dennis was the only individual shown to Peters twice, and again, the only individual depicted in a surveillance image at all.[17] The FBI Agent and Peters both testified that Peters identified Dennis' mugshot before viewing the surveillance photo. But to the extent that Peters had any lingering doubt as to whether Dennis was his dealer as depicted in the mugshot, the second surveillance photograph would have resolved that doubt and confirmed to Peters that he had identified the correct individual. Thus, examining all of the circumstances surrounding the identification procedure, Dennis stands out among the other subjects to a degree that suggests culpability.[18]

---

[17] *Simmons v. United States*, 390 U.S. 377, 383 (1968) (explaining that danger of misidentification increases when individual's image recurs in a single array); *United States v. Stevens*, 935 F.2d 1380, 1390 (3d Cir. 1991) (explaining that wanted board depicting defendant twice and in color photographs when other individuals were depicted once and in black and white or as composite sketches was unnecessarily suggestive); *United States v. Hill*, No. 1:12–CR–0243, 2013 WL 657353, at *5 (M.D.Pa. 2013) (finding manner of presentation was not suggestive in part because law enforcement officer did not present defendant's photograph "by itself or multiple times").

[18] *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003) (citing *Simmons v. U.S.,* 390 U.S. 377, 383 (1968) (explaining that a "showing a witness a photographic array can

The Government offers no persuasive justification for its failure to resort to less suggestive procedures. The Government argues that it was under no obligation to create a photo array comporting with traditional identification procedures because at the time that the array was compiled, Dennis was not a prime suspect.[19] While Dennis may not have been the prime or sole suspect at the time the array was administered, facts adduced at the suppression hearing undermine the notion that Dennis' was not already in the Government's crosshairs. The FBI Agent knew Dennis fit the general description of a potential suspect because Peters described his dealer as a "black male." Additionally, the FBI Agent knew Dennis had previously dealt heroin and was the subject of ongoing investigations by other law enforcement agencies. Further, of the photographs the FBI Agent compiled in advance of his meeting with Peters, Dennis was the only individual the FBI Agent chose to show to Peters twice—once in a mugshot, and once in the surveillance photo. In fact, the FBI Agent brought no other

---

constitute a denial of due process when police attempt to emphasize the photograph of a given suspect, or when the circumstances surrounding the array unduly suggest who an identifying witness should select"). The Government also argues that the photo array was not suggestive because Peters knew Dennis by sight, and thus, the government could not suggest to Peters what he already knew. *See* Brief in Opposition (ECF No. 62) at 10-11. The government cites case law that discusses the extent of a witnesses' familiarity with a defendant as a matter of reliability rather than suggestively, and accordingly, I too will evaluate the extent of Peters' familiarity with Dennis to determine whether Peters' identification was sufficiently reliable.

[19] Brief in Opposition (ECF No. 62) at 5-6, 12.

surveillance photos with him to the meeting with Peters. As the Government concedes, Dennis wasn't a "nobody;" he was a "somebody."

Because Dennis was least a "somebody," the Government states—and I agree—that Peters should have been shown photo arrays: one array depicting Dennis and other individuals approximating his appearance (to investigate the overdose), and a second array depicting individuals of other interest to the government (to investigate heroin trafficking in Williamsport).[20] Such an array would have better protected Dennis from an unnecessarily suggestive identification procedure and permitted the FBI Agent to develop his investigation into other individuals who may have been involved with Williamsport heroin trafficking more generally. The record contains no evidence of exigent circumstances or other explanation as to why the photo identification procedure did not conform to such a procedure. Consequently, the Government has offered no persuasive justification for its failure to resort to less suggestive procedures.

---

[20] At the suppression hearing, the Government stated that a bifurcated process would have been "cleaner." Cleaner indeed, yet I remain troubled that the course of action taken by the government in this case appears to contravene established U.S. Department of Justice protocol. *See* Eyewitness Evidence: A Guide for Law Enforcement, Department of Justice (Oct. 1999), https://www.ncjrs.gov/pdffiles1/nij/178240.pdf (explaining procedures for eyewitness identifications); *see also* Sally Q. Yates. Memorandum, *Eyewitness Identification: Procedures for Conducting Photo Arrays*, U.S. Department of Justice (Jan. 6, 2017), https://www.justice.gov/archives/opa/press-release/file/923201/download (identifying "Eyewitness Evidence: A Guide for Law Enforcement" as the protocol that would have been in place during Peters' interview).

Finally, I find instructive *United States v. Stevens*, a case in which the United States Court of Appeals for the Third Circuit considered numerous circumstances analogous to the matter at hand. There, police assembled a "wanted board" containing eight images of various individuals and displayed it on the wall of the police station.[21] A victim arrived at the police station after she was sexually assaulted.[22] Police advised that she needed to go to the hospital, but before she left, asked her to look at the wanted board to see if she recognized anyone.[23] She immediately recognized and identified her assailant.[24]

The assailant sought to suppress the victim's identification, arguing that the wanted board was unnecessarily suggestive.[25] The court agreed that that the board contained suggestive attributes because the assailant was the only individual depicted twice; the assailant's images were photographs where most of the others depicted were composite sketches; the assailant's photographs were larger than the others; and he was the only individual portrayed in color.[26] In fact, the court concluded that had the "police employed the wanted board as a conventional

---

[21] *United States v. Stevens,* 935 F.2d 1380, 1386-90 (3d Cir. 1991).
[22] *Id.*
[23] *Id*.
[24] *Id.*
[25] *Id*.
[26] *Id.*

10

photographic array, it would have been unnecessarily suggestive."[27] What saved the police and the wanted board, however, was the fact that the police had arranged the board without any particular crime in mind.[28] As the court explained, the wanted board was "a collection of random sketches and photographs that had been assembled in order to facilitate chance identifications."[29] When the officer offhandedly suggested to the victim that she view the wanted board before leaving, he did not expect her to identify her assailant.[30]

Attributes the court found problematic in *Stevens* are present here because Dennis' likeness was not approximated by other photographs used, Dennis' image was depicted twice, and the surveillance image stuck out among an ocean of mugshots. Critically, what saved the wanted board in *Stevens* dooms the photo array used here. Unlike in *Stevens* where the wanted board was assembled to facilitate fortuitous identifications without a particular crime or suspect in mind,[31] the identification session here was used in part to specifically investigate the

---

[27] *Id.* at 1390.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *See also United States v. Mathis*, 264 F.3d 321, 333 (3d Cir. 2001) (explaining that "due process does not protect defendants … from photographic materials briefly viewed one month before the disputed identification, when such materials are distributed only for purposes of general law enforcement").

11

overdose, and Dennis was known to police as a person who could have been involved with that overdose.

In sum, examining all of the circumstances surrounding the presentation of the array, I conclude that it was unnecessarily suggestive.

### B. Peters' Identification of Dennis Was Sufficiently Reliable

An unnecessarily suggestive identification procedure does not, however, automatically merit suppression.[32] A pretrial identification need only be suppressed if the suggestive procedure created a substantial risk of misidentification. The "lynchpin" of this inquiry is reliability, as even unnecessarily suggestive procedures may be upheld so long as the resulting identification is sufficiently reliable.[33] To determine whether an identification was reliable, the Court examines the totality of the circumstances and considers five factors: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at

---

[32] *See, e.g., Perry v. New Hampshire*, 565 U.S. 228, 239 (2012) (citations omitted); *United States v. Dowling,* 855 F.2d 114, 117 (3d Cir.1988), *aff'd,* 493 U.S. 342 (1990) (explaining that even if identification procedure is unnecessarily suggestive, "a degree of suggestiveness does not in itself require exclusion of the evidence").

[33] *United States. v. Brownlee*, 454 F.3d 131, 133-39 (3d Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977) (explaining that a "suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability" and reliability is the "linchpin in determining the admissibility of identification testimony")).

the confrontation; and (5) the length of time between the crime and confrontation."[34]

In the case at bar, the circumstances in their totality suggest that Peters' identification of Dennis was reliable.

First, Peters had adequate opportunity to observe Dennis during the heroin purchase that lead to the overdose.[35] Peters was able to observe Dennis in daylight when he entered the car, when they drove to the heroin pick-up location, when Dennis exited the vehicle and entered a residence, and when Dennis returned to the vehicle with heroin.

Second, there is no evidence in the record to suggest that Peters' attention or ability to perceive Dennis' appearance was impaired.[36] Peters testified that he was excited to purchase heroin and was not scared when he met Peters. He also testified that he had not taken any drugs prior to the transaction with Dennis.

---

[34] *Id.* at 139 (citing *Neil v. Biggers,* 409 U.S. 188, 198–99 (1972)).

[35] *See, e.g., United States v. Emanuele*, 51 F.3d 1123, 1136 (3d Cir.1995) (explaining that identification evinced reliability where the witness was able to observe defendant from two feet away, for three or four minutes); *Burkett v. Fulcomer*, 951 F.2d 1431, 1448 (3d Cir.1991) (explaining that identification evinced reliability when victim had a face-to-face confrontation with defendant in her house lasting approximately one-half hour); *cf. United States v. Brownlee*, 454 F.3d 131, 138 (3d Cir. 2006) (citing *Manson v. Brathwaite,* 432 U.S. 98, 107 (1977) (explaining that fact that witness viewed defendant for only 30 seconds during carjacking weakened reliability of identification).

[36] *cf. Thomas v. Varner*, 428 F.3d 491, 503-04 (3d Cir. 2005) (explaining identification did not evince reliability when witness testified that "he was facing the assailant only for a short time and was concentrating first on his chess game and then on attempting to flee").

Third, Peters' prior description of Dennis as a black male, though general, was accurate. The reliability of Peters' identification could have been strengthened had Peters provided police with a more detailed description.[37] Nevertheless, I find that his generic description is a failure of articulation rather than indicia of unreliability. There is no evidence in the record that Peters made any prior descriptions that were incorrect.[38]

Fourth, Peters testified that during his interview with the FBI Agent, he was 100% certain in identifying Dennis both in the mugshot and the surveillance photo.[39] The FBI Agent testified that Dennis immediately stopped flipping through the images upon viewing Dennis' mugshot, and proceeded to identify him as the dealer.[40] Even assuming that the surveillance image corruptively strengthened Peter's conviction after he made the mugshot identification, the magnitude of such

---

[37] *United States v. Anthony*, 458 Fed.Appx. 215, 218 (3d Cir. 2012) (explaining identification evinced reliability when witness paid "close attention to [the defendant's] physical appearance…and the fact that he cited specific details regarding [the defendant's] features"); *United States v. Smith*, No. 03-4650, 2005 WL 851454, at *4 (explaining that identification lacked reliability when witness could not describe defendant's specific characteristics, except to say defendant "looks about the same as he did two years ago").

[38] *Brownlee*, 454 F.3d at 139-40 (explaining that witness' incorrect description of defendant's age and what defendant wore undermined reliability of identification).

[39] *Anthony*, 458 Fed.Appx. at 218 (explaining identification evinced reliability when witness expressed "certainty that he had identified the correct individual"); *Wojtczak v. Fulcomer*, Civ. A. No. 85–1688, 1988 WL 99678, at *4 (E.D.Pa. Sept. 22, 1988) (explaining that identification evinces reliability when witness, "without being told that the petitioner's photograph was included, selected, without hesitation and with a great deal of certainty, [defendant's] photograph").

[40] *United States v. Emanuele*, 51 F.3d 1123, 1136 (3d Cir.1995) (explaining that identification evinced reliability when witness recognized defendant immediately when he was brought into the courtroom).

an effect is dampened by the fact that Peters was previously familiar with Dennis' appearance. Peters had purchased heroin from Dennis in-person on approximately five prior occasions, and each time Peters had an opportunity to view Dennis' face.[41] Although some of these meetings provided Peters with only a quick glance at Dennis' face, the fact that they had met on multiple prior occasions increases the likelihood that Peters knew what Dennis looked like.[42]

Fifth, only three weeks had elapsed from the time Peters purchased heroin from Dennis to the time that he identified him before the FBI Agent, and there is no evidence in the record that the passage of time impaired Peters' recollection.[43]

Accordingly, under the totality of the circumstances, the reliability of Peters' identification outweighs the suggestiveness of the pretrial identification

---

[41] *United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008) (stating that identification is sufficiently reliable when "prior to [defendant's] arrest, the witness had lived with him for over a month"); *Wojtczak*, 1988 WL 99678, at *4 (explaining that identification evinces reliability when the "victim had clear and repeated opportunities to observe the petitioner face to face both prior to, during, and after" the crime); *United States v. London*, 39 Fed.Appx. 758, 759 (3d Cir. 2002) (explaining district court did not commit error by admitting identification as not unnecessarily suggestive and reliable when witness knew defendant for three years before the crime, recognized the defendant before the crime commenced, and identified him immediately after he committed the robbery, and defendant was sole individual depicted in a photo array); *United States v. Lawrence*, 349 F.3d 109, 116 (3d Cir. 2003) (concluding that even though photo array may have let defendant "stand out" among the others, the witnesses knew the defendant and "had seen him on multiple occasions before the shooting").

[42] *cf. United States v. Smith*, No. 03-4650, 2005 WL 851454, at *4 (explaining that identification lacks reliability when witness observed defendant on only two prior occasions, each meeting lasted 45 seconds, and witness' view was hampered by two car windshields).

[43] *Wojtczak*, 1988 WL 99678, at *4 (suggesting that identification occurring only three months after an incident did not support likelihood of misidentification).

15

procedures.[44] For the same reasons that I find Peters' pretrial identification admissible, I also conclude that Peters has an independent basis to make an in-court identification.[45] A jury will decide whether Peters is reliable and credible.[46]

---

[44] *See, e.g.*, *Wise*, 515 F.3d at 215 (admitting in-court identification in spite of unnecessarily suggestive identification procedure); *Lawrence*, 349 F.3d at 116 (concluding that even though photo array may have let defendant "stand out" among the others, the district court did not abuse discretion in admitting photo identification under the totality of the circumstances).

[45] The standard for admitting evidence of a pretrial identification is the same as the standard for permitting an in-court identification in the wake of a pretrial identification. *United States v. Clausen*, 328 F.3d 708, 712-13 (3d Cir. 2003) (citing *United States v. Mathis,* 264 F.3d 321, 330 (3d Cir.2001) ("In both [pretrial identification and in-court eyewitness identification], the eyewitness testimony will be permitted unless the pretrial identification procedure was so unnecessarily suggestive as to give rise to such a substantial likelihood of irreparable misidentification that admitting the identification testimony would be a denial of due process.")); *United States v. Smith*, 127 Fed. Appx. 608, 611-12 (3d Cir. 2005) (applying five-factor test to examine whether witness making in-court identification had an independent basis to identify defendant).

[46] *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) ("The Constitution, our decisions indicate, protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit."); *Mathis*, 264 F.3d at 333 (explaining that when suppression is not constitutionally necessary, "modest levels of 'suggestiveness' speak only to the evidence's ultimate reliability and should therefore be argued for authoritative appraisal to the factfinder"); *United States v. Flenory*, 619 F.2d 301, 304-05 (3d Cir. 1980) (explaining that because the court found no due process violation in the government's identification procedure, lingering uncertainty about the reliability of the identification goes to the evidence's weight, not its admissibility).

## III. CONCLUSION

For the foregoing reasons, Dennis' Motion to Suppress will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge